## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **SWIMWEAR SOLUTION, INC.,** | |
| **Plaintiff,** | |
| **v.** | **Case No. 17-CV-02691-JAR-GLR** |
| **ORLANDO BATHING SUIT, LLC, d/b/a EVERYTHING BUT WATER** | |
| **Defendant.** | |

## MEMORANDUM AND ORDER

Plaintiff Swimwear Solution, Inc. ("Swimwear") filed this action against Defendant Orlando Bathing Suit, LCC, d/b/a Everything But Water ("EBW"), in the District Court of Johnson County, Kansas on November 6, 2017, bringing claims for breach of contract (Count I), tortious interference with existing, exclusive supplier contracts (Count II), tortious interference with existing employee contracts (Count III), tortious interference with prospective business (Count IV), breach of fiduciary duty (Count V), misappropriation of trade secrets under Kansas law (Count VI), misappropriation of trade secrets under New York law (Count VII), misrepresentation and fraud (Count VIII), unjust enrichment (Count IX), conversion (Count X), and declaratory judgment (Count XI).[1]

After removing the action to this Court, Defendant filed its Answer and Counterclaim on December 15, 2017, asserting a breach-of-contract counterclaim against Plaintiff.[2] This matter now comes before the Court on Defendant's Motion to Dismiss Counts III, V, VI, VII, IX and X of the Complaint (Doc. 5), Plaintiff's Motion to Dismiss EBW's Counterclaim (Doc. 14), and

---

[1] Doc. 1-1.

[2] Doc. 9.

Defendant's Motion for a More Definite Statement (Doc. 7) as to Count VIII.  The motions are fully briefed, and the Court is prepared to rule.  For the reasons set forth below, Defendant's Motion to Dismiss is granted, with leave to amend as to Count IX, Plaintiff's Motion to Dismiss EBW's Counterclaim is denied, and Defendant's Motion for a More Definite Statement is granted.

## I.      Motions to Dismiss

### A.      Legal Standard

To survive a motion to dismiss brought under Fed. R. Civ. P. 12(b)(6), a complaint must contain factual allegations that, assumed to be true, "raise a right to relief above the speculative level"[3] and must include "enough facts to state a claim for relief that is plausible on its face."[4] Under this standard, "the complaint must give the court reason to believe that *this* plaintiff has a reasonable likelihood of mustering factual support for *these* claims."[5]  The plausibility standard does not require a showing of probability that "a defendant has acted unlawfully," but requires more than "a sheer possibility."[6]  "[M]ere 'labels and conclusions,' and 'a formulaic recitation of the elements of a cause of action' will not suffice; a plaintiff must offer specific factual allegations to support each claim."[7]  Finally, the court must accept the nonmoving party's factual allegations as true and may not dismiss on the ground that it appears unlikely the allegations can be proven.[8]

---

[3] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing 5C Charles Alan Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1216, at 235–36 (3d ed. 2004)).

[4] *Id.* at 570.

[5] *Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis in original).

[6] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556).

[7] *Kan. Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th Cir. 2011) (quoting *Twombly*, 550 U.S. at 555).

[8] *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 555).

The Supreme Court has explained the analysis as a two-step process.  For the purposes of a motion to dismiss, the court "must take all the factual allegations in the complaint as true, [but is] 'not bound to accept as true a legal conclusion couched as a factual allegation.'"[9]  Thus, the court must first determine if the allegations are factual and entitled to an assumption of truth, or merely legal conclusions that are not entitled to an assumption of truth.[10]  Second, the court must determine whether the factual allegations, when assumed true, "plausibly give rise to an entitlement to relief."[11]  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[12]

## B.    Factual Allegations

The following facts are taken from Plaintiff's Complaint and Defendant's First Amended Answer and Counterclaim, and are assumed to be true for the purposes of the parties' respective motions to dismiss.  Plaintiff is a local, family-owned boutique retailer of swimwear and other apparel.  Plaintiff's retail shop is located in the Kansas City suburb of Overland Park, Kansas, and Plaintiff has been serving the metropolitan area for nearly thirty years by being "the go-to shop for access to unique and fashionable swimwear and apparel."[13]  Plaintiff is widely known throughout the community and enjoys a loyal customer base due to its knowledgeable customer service and unmatched selection.  Plaintiff "has established and built its unique brand on the foundation of its owner, Laurel Jones' intimate knowledge of the preferences, style, and buying

---

[9] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[10] *Id.* at 678–679.

[11] *Id.* at 679.

[12] *Id.* at 678 (citing *Twombly*, 550 U.S. at 556).

[13] Doc. 1-1, ¶ 2.

trends of the local market."[14]  Plaintiff's "marketplace knowledge has taken years to develop,"[15] and Plaintiff has grown its business through "the cultivation of exclusive, valuable relationships with a substantial number of luxury swimwear and apparel vendors" that supply its inventory.[16] The success of Plaintiff's business depends upon the exclusivity of these relationships with vendors, as well as the retention of its highly-trained staff.

Defendant is a national chain of approximately 100 retail stores, operating under the name "Everything But Water," that sells swimwear and apparel "predominately throughout California, Florida, and Texas, as well as other states."[17]  In early June 2012, Plaintiff was approached by Defendant's Chairman, Randall Blumenthal, for the purported purpose of discussing Defendant's acquisition of Plaintiff.

On July 9, 2012, Plaintiff and Defendant entered into a Mutual Nondisclosure Agreement ("MNDA").  The MNDA, attached as an exhibit to Plaintiff's Complaint, protected:

> … any information disclosed by either party to the other party, either directly or indirectly, in writing, orally or by inspection, including without limitation documents, prototypes, samples, and information relating to, without limitation, (i) each party's trade secrets, past, present and future research, development or business activities or the results from such activities, business plans, strategies, methods and/or practices; and (ii) each party's business that is not generally known to the public, including, but not limited to, information about each party's personnel, products, customers, marketing strategies, services or future business plans.[18]

---

[14] *Id.* ¶ 13.

[15] *Id.*

[16] *Id.* ¶ 14.

[17] *Id.* ¶ 4–5.

[18] *Id.*, Ex. 1, ¶ 2.

The MNDA forbade each party from using the confidential information of the other party "for any purpose except to evaluate and engage in discussions concerning a potential business relationship between the parties."[19]

Each party was obligated under the MNDA to use its best efforts to protect the other party's confidential information, and to return any copies of information provided to it upon request. The MNDA further stated that:

> The obligations of each receiving party hereunder with respect to any particular Confidential Information shall survive until the earlier of such time as such Confidential Information of the other party disclosed hereunder becomes publicly known and made generally available through no action or inaction of the receiving party, or two (2) years from the date such Confidential Information was disclosed to the receiving party hereunder.[20]

Over the course of three years, the parties engaged in discussions during which Defendant sought—and Plaintiff provided—certain confidential information that Plaintiff had acquired "through years of effort to become the leading swimwear boutique in the area."[21] This information included Plaintiff's "advertising strategies, exclusive vendor contracts, local market reports, employee compensation and retention policies, revenues and operating figures, optimal store locations, sales records, reports of the strongest selling products, and the company's financial history, all of which fell under the protections of the MNDA."[22]

During the parties' negotiations, Mr. Blumenthal "admitted he had little to no knowledge of the business climate that would support the existence of a boutique swimwear store in Johnson

---

[19] *Id.*, Ex. 1, ¶ 3.

[20] *Id.*, Ex. 1, ¶ 9.

[21] *Id.* ¶¶ 25, 29.

[22] *Id.* ¶ 25.

County,"[23] and "offered wildly differing valuations of [Plaintiff's] business."[24]  As negotiations continued, the parties renewed the MNDA on January 21, 2015 and July 16, 2015.   However, Defendant refused to enter into a non-compete agreement that Plaintiff proposed in July 2015.

On or about August 31, 2015, Defendant communicated to Plaintiff that Defendant was under time pressure to make the deal happen.  Plaintiff then reviewed, amended, and emailed contracts to Defendant with the intent of selling its business, despite having become skeptical about Defendant's true intentions.  In an October 27, 2015 email transmitting the amended contracts to Defendant, Jones reminded Blumenthal that pursuant to the terms of the MNDA, Defendant was not permitted to "use any of [Plaintiff's] confidential information to facilitate the opening of a retail or wholesale operation in competition with [Plaintiff's] store."[25]  Jones further stated: "I hope our negotiations are successful, but if they are not, please understand that I am prepared to take all necessary action if you or your company should open a competing store in the Kansas City area."[26]

On October 28, 2015, Defendant's attorney sent Jones a letter terminating business negotiations between the parties due to Jones's "threat" to take any action necessary to protect her business.[27]  On November 9, 2015, Blumenthal followed up with an email confirming that Defendant would not follow through with the transaction because it was not the "right fit."[28]  On the same day, Blumenthal relayed to Jones in conversation that he had not looked at the terms of the revised contract prior to rejecting it.

---

[23] *Id.* ¶ 20.

[24] *Id.* ¶ 21.

[25] *Id.*, Ex. 5.

[26] *Id.*, Ex. 5.

[27] *Id.*, Ex. 6.

[28] *Id.*, Ex. 7.

Shortly after Defendant ceased negotiations with Plaintiff, Defendant began entering into lease and construction agreements to open a store directly across the street and approximately 600 feet from Plaintiff's location.  Defendant's "primary development, planning, and creative actions taken to open and develop the [EBW] Store occurred while [Defendant] was legally bound by . . . the MNDA."[29]  Further, in October 2017, an agent of Defendant contacted one of Plaintiff's employees both in Plaintiff's store and over the phone, attempting to persuade the employee to work for Defendant despite knowing that this employee was party to a non-compete agreement with Plaintiff.  Defendant warned the employee not to tell other co-workers about the solicitation.  Plaintiff contends that Defendant never had any intention of purchasing Swimwear, but induced Plaintiff to enter into the MNDA so that Defendant could acquire Plaintiff's confidential information and trade secrets for the purpose of opening a competing store.[30]

In its answer to Plaintiff's Complaint, Defendant brings a counterclaim for breach of contract.  Defendant contends that Plaintiff has breached the MNDA by failing to return Defendant's confidential information upon Defendant's written request.  Defendant alleges that Plaintiff failed to respond to an October 2015 letter requesting the return of specifically identified and highly confidential, proprietary information, and that after the filing of this lawsuit, Plaintiff returned some—but not all—of the requested information.  Defendant alleges that Plaintiff "has lost, misplaced, or disposed of some of EBW's Confidential Information."[31]

---

[29] *Id.* ¶ 43.

[30] *Id.* ¶¶ 19, 31.

[31] Doc. 30, ¶ 11.

### C.    Choice of Law

Because this Court is sitting in diversity jurisdiction, it must apply the choice-of-law rules of the forum state, Kansas.[32]  The Court is therefore bound to apply Kansas's rule as to whether a contractual choice-of-law provision is enforceable.[33]  Kansas law recognizes that parties may agree "for the law of another state to govern their rights and duties so long as the transaction at issue has 'a reasonable relation' to that state."[34]  Here, the parties' MNDA contains a choice-of-law provision providing that "the Agreement shall be governed by laws of the State of New York."[35]  Neither party argues that New York law should not apply; rather, both parties cite New York law with regard to the contractual claims at issue.  Kansas courts have in the past permitted choice-of-law provisions to control, and the Court sees no reason why Kansas would not give effect to the parties' choice of New York law under the circumstances of this case.[36]  Thus, New York law governs the parties' claims arising from the MNDA.

In a tort action, however, Kansas courts apply the doctrine of *lex loci delicti,* meaning "the law of the place where the tort was committed" or where the wrong occurred.[37]  Where the wrong occurred is generally considered to be the place where the injury was suffered.[38]  Here,

---

[32] *Klaxton Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496 (1941); *Missouri Pac. R. Co. v. Kan. Gas & Elec. Co.,* 862 F.2d 796, 798 n. 1 (10th Cir. 1988).

[33] *Equifax Servs., Inc. v. Hitz,* 905 F.2d 1355, 1360 (10th Cir. 1990); *Old Colony Ventures I, Inc. v. SMWNPF Holdings, Inc.,* 918 F. Supp. 343, 346 n.4 (D. Kan. 1996).

[34] *Nat'l Equip. Rental, Ltd. v. Taylor,* 587 P.2d 870, 872 (Kan. 1978).

[35] Doc. 1-1, Ex. 1, ¶ 11.

[36] *See Atchison Casting Corp. v. Dofasco, Inc.,* 889 F. Supp. 1445, 1455 (D. Kan. 1995) (applying Ontario or Canadian law to contracts claim per choice-of-law provision); *O.V. Mktg. Assocs., Inc. v. Carter,* 766 F. Supp. 960, 964 (D. Kan. 1991) (applying Nebraska law where parties had agreed that Nebraska law would govern their contractual relationship).

[37] *Ritchie Enters. v. Honeywell Bull, Inc.,* 730 F. Supp. 1041, 1046 (D. Kan. 1990) (citing *Hawley v. Beech Aircraft Corp.,* 625 F.2d 991, 993 (10th Cir.1980); *Ling v. Jan's Liquors,* 703 P.2d 731, 735 (Kan. 1985)); *Atchison Casting Corp.,* 889 F. Supp. at 1455.

[38] *Ritchie Enters.,* 730 F. Supp. at 1046 (citing *Ling,* 703 P.2d at 735).

Plaintiff alleges that Defendant's tortious conduct and Plaintiff's resulting injury occurred in Kansas. Because Kansas law is settled regarding the application of *lex loci delicti*, and because "the express and unambiguous wording of the parties' choice of law provision reveals only an agreement on what law should govern their contract, rather than any agreement on what law should apply to tort claims arising from the circumstances of their contractual relationship,"[39] Kansas law will govern Plaintiff's tort claims.

    **D.**    **Analysis**

        **1.**    **Defendant's Motion to Dismiss Counts III, V, VI, VII, IX and X of the Complaint**

            **i.**    **Count V (Breach of Fiduciary Duty)**

Plaintiff brings a claim against Defendant for breach of fiduciary duty, alleging that the MNDA created a fiduciary relationship between the parties that continued until the MNDA expired and that Defendant breached its fiduciary duty through misrepresentations and the misuse of Plaintiff's confidential information.[40] Defendant argues that Plaintiff's breach-of-fiduciary-duty claim relies on the same duties agreed to in the MNDA and should therefore be dismissed as a restatement of its breach-of-contract claim. In response, Plaintiff alleges that Defendant owed certain additional fiduciary duties based on the special confidence it placed in Defendant and that dismissal is premature because the existence of an implied-by-law fiduciary duty requires inquiring into the factual relationship between the parties. Defendant counters that the Complaint does not sufficiently plead any special confidence or any additional fiduciary duties independent of the MNDA.

---

[39] *Id*. at 1046–47 (applying Massachusetts law to contract claims pursuant to choice-of-law provision but finding that Kansas law governed tort claims, and collecting cases separating contract and tort claims and applying choice-of-law provisions only to the former) (citations omitted).

[40] Doc. 1-1, ¶¶ 87, 90, 92.

Kansas courts are careful to point out that a contractual relationship between parties does not bar all tort claims.[41]  However, tort claims such as breach of fiduciary duty can be pleaded in parallel with breach-of-contract claims only if the tort is independent of the bargained-for duties in the contract.[42]  Plaintiff cites two cases—*Pipeline Productions, Inc. v. Horsepower Entertainment*[43] and *Burcham v. Unison Bancorp, Inc.*[44]—in which courts allowed breach-of-fiduciary-duty claims to be pleaded in parallel with breach-of-contract claims.[45]  In both cases, however, the court identified a fiduciary duty independent of the contract before allowing the breach-of-fiduciary-duty claims to proceed.[46]  Here, Plaintiff alleges the existence of certain fiduciary duties such as Defendant's duty to safeguard and maintain Plaintiff's confidential information.  But unlike the independent duties in *Pipeline Products* and *Burcham*, Plaintiff bargained for these duties in the MNDA.  The MNDA expressly states that the parties shall not "disclose any Confidential Information of the other party to third parties or to such party's employees," and that the parties agree to "use [their] best efforts to protect the secrecy of and avoid disclosure and unauthorized use of the Confidential Information of the other party."[47]  Therefore, any alleged breach of these duties cannot constitute an independent tort under Kansas law.

---

[41] *Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 145 (Kan. 2003); *see also Regal Ware, Inc. v. Vita Craft Corp.*, 653 F. Supp. 2d 1146, 1152 (D. Kan. 2006).

[42] *Accountable Health Sols., LLC v. Wellness Corp. Sols., LLC*, No. 16-2494-DDC-TJJ, 2017 WL 6039537, at *12 (D. Kan. Dec. 6, 2017) (citing *Burcham*, 77 P.3d at 146).

[43] No. 15-4890-KHV, 2017 WL 4536420 (D. Kan. Oct. 11, 2017).

[44] 77 P.3d 130 (Kan. 2003).

[45] Doc. 21 at 9.

[46] *Pipeline Prods., Inc.*, 2017 WL 4536420, at *3–4 (describing breach of fiduciary duty, based on duties of loyalty and care not expressly bargained for in the contract, as an "independent tort"); *Burcham*, 77 P.3d at 146 (noting that the plaintiffs' action was "based upon an independent tort and as a matter of law [was] not based upon breach of a contract").

[47] Doc. 1-1, Ex. 1, ¶¶ 3, 4.

Plaintiff implies that additional fiduciary duties—such as duties to refrain from unfair competition and from usurping business opportunities—exist independent of the MNDA.[48]  As Defendant notes, Plaintiff fails to explain why (assuming these duties are indeed independent) such a fiduciary relationship creating these additional duties would exist in the first place. Plaintiff appears to plead that a fiduciary relationship existed between the parties only because they entered into a contractual relationship and because Defendant possessed Plaintiff's most sensitive confidential information.[49]  But these allegations are insufficient to establish the plausible existence of a fiduciary relationship.  Although one party placing confidence in another is one element required to establish the existence of an implied-by-law fiduciary relationship in Kansas,[50] it is not the only element.  Rather, in Kansas, a fiduciary relationship additionally requires "a certain inequality, dependence, . . . business intelligence, knowledge of the facts involved, or other conditions, giving to one advantage over the other."[51]  A fiduciary relationship requires "confidence reposed on one side *and resulting domination and influence on the other*,"[52] and a fiduciary is defined as "a person with a duty to act primarily *for the benefit of another*."[53]

Plaintiff has pleaded sufficient facts to plausibly show that it placed confidence in Defendant, but Plaintiff has not pleaded any facts demonstrating that Defendant held a position of domination or influence over Plaintiff or that Defendant had a duty to act primarily for

---

[48] Doc. 1-1, ¶ 92; Doc. 21 at 9–10.  The Court acknowledges Defendant's argument that Plaintiff blurs the line between the existence of fiduciary duties, as described at ¶¶ 88 and 91 of the Complaint, and breach of those duties, as described at ¶ 92.  Doc. 32 at 4.  But Plaintiff provides enough detail in alleging breach in ¶ 92 of the Complaint for the Court to infer what duties must have existed to begin with.

[49] Doc. 1-1, ¶¶ 87, 89.

[50] *Ritchie Enters. v. Honeywell Bull, Inc.*, 730 F. Supp. 1041, 1053 (D. Kan. 1990) (citing *Olson v. Harshman*, 668 P.2d 147, 151 (Kan. 1983)).

[51] *Id.*

[52] *Denison State Bank v. Madeira*, 640 P.2d 1235, 1241 (Kan. 1982) (emphasis added).

[53] *Id.* (emphasis added).

Plaintiff's benefit.  Reasonably sophisticated business entities negotiating at arm's length, as here, typically act primarily for their *own* benefit rather than that of the other party.  The Court agrees with Defendant that Plaintiff has not sufficiently pleaded the existence of a special relationship between the parties that would give rise to these additional fiduciary duties.[54]

Plaintiff argues that it is premature to dismiss its breach-of-fiduciary-duty claim because facts might emerge in discovery showing the existence of an implied-by-law fiduciary relationship.[55]  On a motion to dismiss, however, the court looks to whether the complaint contains "enough facts to state a claim for relief that is plausible on its face."[56]  Plaintiff's Complaint does not set forth facts giving rise to a plausible inference that Defendant had a position of domination or influence over Plaintiff, or that Defendant was obligated to act primarily for Plaintiff's benefit.  The Court therefore grants Defendant's motion to dismiss Plaintiff's breach-of-fiduciary-duty claim with prejudice.

### ii.    Count X (Conversion)

Plaintiff brings a claim against Defendant for the tort of conversion, alleging that Defendant has assumed a right of ownership over Plaintiff's confidential information.  Defendant argues that this claim must be dismissed because it is duplicative of Plaintiff's breach-of-contract claim.  Defendant argues alternatively that Plaintiff waived its conversion claim by entering into a contract with a provision that expressly disclaims any additional duties beyond the contract itself.  This Court does not need to reach Defendant's waiver argument, however, because it agrees with Defendant that Plaintiff's conversion claim is duplicative of its breach-of-contract claim and must be dismissed.

---

[54] Doc. 32 at 5.

[55] Doc. 21 at 10.

[56] *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Again, Kansas law is clear that where parties enter into a contract that defines their rights and duties, they are precluded from bringing tort causes of action concerning the same subject matter as that covered by the contract.[57]  A tort claim can proceed in parallel with a breach-of-contract claim only when the tort is independent of the contract and the contract does not expressly permit the allegedly tortious conduct.[58]  Because the parties' MNDA does not expressly permit conversion, the only question is whether the acts constituting the alleged conversion are independent of the duties and obligations bargained for in the MNDA.  The Court agrees with Defendant that Plaintiff's conversion claim is not independent of the MNDA, and that the conversion claim must therefore be dismissed.

Determining whether a tort is independent of a contract is often difficult.[59]  Here, however, the broad language of the MNDA makes the analysis straightforward.  Plaintiff bases its conversion claim on Defendant's alleged "retention and use" of Plaintiff's confidential information to the exclusion of Plaintiff's own property rights.[60]  But the MNDA contains broad terms expressly governing both the retention and use of Plaintiff's confidential information.  As to retention, the MNDA states that all documents or tangible objects in the other party's possession "shall be promptly returned to the disclosing party upon the disclosing party's written request."[61]  As to use, the MNDA states that "[e]ach party agrees not to use any Confidential Information of the other party for any purpose except to evaluate and engage in discussions concerning a potential business transaction between the parties."[62]  The MNDA therefore

---

[57] *Ford Motor Credit Co. v. Suburban Ford*, 699 P.2d 992, 998 (Kan. 1985).

[58] *Burcham v. Unison Bancorp, Inc.*, 77 P.3d 130, 145 (Kan. 2003).

[59] *Id.*

[60] Doc. 1-1, ¶ 147.

[61] *Id.*, Ex. 1, ¶ 7.

[62] *Id.*, Ex. 1, ¶ 3.

governs both Defendant's retention and use of Plaintiff's confidential information, and Plaintiff must rely on its breach-of-contract claim to the exclusion of its conversion claim.[63]

Plaintiff argues that it must be able to plead its tort claims to be adequately compensated for its harm, asserting that a tort claim is considered independent of a breach of contract claim if it results in additional damages.[64]  But the Court agrees with Defendant that Plaintiff misreads Kansas law on this issue.  The authority on which Plaintiff relies does not define an independent tort according to available damages, nor does it conflict with settled Kansas law, which states that a tort claim cannot proceed in parallel with a breach-of-contract claim unless the tort is independent of the contract.[65]  As discussed above, the alleged conversion is not independent of the contract terms, and the Court therefore grants Defendant's motion to dismiss Plaintiff's conversion claim with prejudice.

> ### iii.  Count VI (Misappropriation of Trade Secrets under Kansas Law) and Count VII (Misappropriation of Trade Secrets Under New York Law)

Plaintiff additionally brings claims against Defendant for misappropriation of trade secrets under both Kansas and New York law.  Trade-secret misappropriation is governed by statute in Kansas and by common law in New York.  Defendant again offers alternative theories

---

[63] *See Regal Ware, Inc. v. Vita Craft Corp.*, 653 F. Supp. 2d 1146, 1152 (D. Kan. 2006) (granting motion to dismiss conversion claim where contract defined the rights to the property at issue).

[64] Doc. 21 at 6 (citing *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 675–76 (10th Cir. 2007)).

[65] *Burcham v. Unison Bancorp., Inc.*, 77 P.3d 130, 145 (Kan. 2003).  *Wade*, on which Plaintiff relies, finds that the basis of a fraud claim must be different from the conduct on which a breach-of-contract claim is based. Plaintiff appears to focus on a parenthetical from *Wade* stating that "there must be an independent tort resulting in additional injury before punitive damages can be recovered in a breach of an insurance contract action."  *Wade*, 483 F.3d at 675 (citing *Guarantee Abstract & Title Co. v. Interstate Fire & Cas. Co.*, 652 P.2d 665, 668 (Kan. 1982)). Plaintiff interprets this language as meaning that a tort is independent of breach of contract if it results in damages greater than those caused by the breach, but this is incorrect.  This parenthetical language starts with the presumption of an independent tort, then says that the tort must result in additional injury to make punitive damages available.

for dismissing these claims, first on the ground that any duties to protect trade secrets are the same as those bargained for in the MNDA and are therefore displaced by it, and second on the ground that the MNDA expressly waives any trade-secret protections for Plaintiff's confidential information. The Court agrees with Defendant that Plaintiff waived its trade-secret remedies by entering into the MNDA. There is therefore no need to reach the question of displacement.

Although Plaintiff brings trade-secret claims under both Kansas and New York law, whether those claims were validly waived is ultimately a contract question, which must be resolved under New York law. In New York, "[a]bsent some violation of law or transgression of a strong public policy, the parties to a contract are basically free to make whatever agreement they wish, no matter how unwise it might appear to a third party."[66] The parties' MNDA contains a merger clause expressly waiving trade-secret protections for both parties.[67] It appears on the facts pleaded that Plaintiff entered into the MNDA despite unequivocal language waiving trade-secret obligations. Further, not only did Plaintiff enter into the MNDA initially, but it agreed to renew it on two separate occasions.[68]

Plaintiff now argues that the MNDA's waiver provision is unenforceable. First, Plaintiff argues that the provision is ambiguous, and that ambiguous waivers are unenforceable under both Kansas and New York law.[69] But there is nothing ambiguous about the waiver provision here. Indeed, the provision could hardly be more clear in waiving trade-secret protections when it states that the MNDA "contains the entire agreement between the parties with respect to the

---

[66] *Rowe v. Great Atl. & Pac. Tea Co.*, 385 N.E.2d 566, 569 (N.Y. 1978). Kansas law is substantially the same on this point. *See Metro. Life Ins. Co. v. Strnad*, 876 P.2d 1362, 1371 (Kan. 1994) (citing *Wille v. Sw. Bell Tel. Co.*, 549 P.2d 903, 905 (Kan. 1976) ("[A] party who has fairly and voluntarily entered into . . . a contract is bound thereby, notwithstanding it was unwise or disadvantageous to that party.").

[67] Doc. 1-1, Ex. 1, ¶ 11.

[68] Doc. 1-1, ¶¶ 22, 32, 34.

[69] Doc. 21 at 7.

subject matter hereof, and *neither party shall have any obligation*, express or implied by law, with respect to *trade secret* or proprietary information of the other party *except as set forth herein*."[70]  Plaintiff argues that the remedies provision[71] in the contract conflicts with the waiver provision by allowing the parties to seek "all legal remedies," and therefore renders the waiver contradictory and unclear.  Read in context, however, the remedies provision seems clear enough—"all legal remedies" is juxtaposed against "injunctive relief," an equitable remedy, and simply refers to all legal remedies for a breach-of-contract claim.  Thus, Plaintiff retains all available remedies for breach of contract, if proven, but has waived trade-secret protection for its confidential information except as set forth in the MNDA.

Second, Plaintiff argues that the waiver of trade-secret remedies is unenforceable because it violates public policy.  Where the application of the contracting parties' choice-of-law provision would produce a result contrary to Kansas public policy, Kansas courts will not apply another state's law.[72]  Here, however, the Court agrees with Defendant that the MNDA's waiver term does not violate public policy under either Kansas or New York law, and therefore dismisses Plaintiff's trade-secret misappropriation claims because they are waived by the express provisions of the MNDA.

In Kansas, "[a] contract is not void as against public policy unless [it is] injurious to the interests of the public or contravenes some established interest of society."[73]  "The public policy of a state is the law of that state as found in its constitution, statutory enactments, and judicial

---

[70] Doc. 1-1, Ex. 1, ¶ 11 (emphasis added).

[71] *Id.*, Ex. 1, ¶ 10.

[72] *See, e.g., Brenner v. Oppenheimer & Co.*, Inc., 44 P.3d 364, 375 (Kan. 2002); *HealthOne, Inc. v. Columbia Wesley Med. Ctr.*, 93 F. Supp. 2d 1152, 1155–56 (D. Kan. 2000) (citations omitted).

[73] *Frazier v. Goudschaal*, 295 P.3d 542, 554–55 (Kan. 2013).

decisions."[74]  Although contracts that contravene public policy are unenforceable, "it is the duty of the courts to sustain the legality of contracts in whole or in part when possible."[75]  New York law is substantially the same on this point.  In New York, contract terms are generally enforceable unless they are illegal or violate a "strong public policy."[76]  Public policy "mean[s] the law of the state, whether found in the Constitution, the statutes or judicial records."[77]

Plaintiff has cited no authority establishing that a voluntary waiver of trade-secret remedies in favor of contract remedies contravenes anything in the constitutions, statutes, or judicial decisions of Kansas or New York.  Kansas has a trade-secret statute, the Kansas Uniform Trade Secrets Act, but that Act expressly states that while it displaces tort remedies, it leaves contract remedies undisturbed.[78]  This indicates respect by the legislature for bargained-for relations between parties.  Plaintiff relies on a First Circuit case that describes the public's "manifest interest in commercial innovation and development" as motivating trade-secret protection in Massachusetts.[79]  But the court goes on to suggest that a waiver of trade-secret protection would be valid so long as it was explicit and unambiguous.[80]

Plaintiff also cites cases from both Kansas and New York in which contract terms purporting to waive tort liability were found to violate public policy.[81]  None of these cases addresses trade secrets specifically, and the Court agrees with Defendant that the cases are

---

[74] *Petty v. City of El Dorado*, 19 P.3d 167, 172 (Kan. 2001).

[75] *Id.*

[76] *Rowe v. Great Atl. & Pac. Tea Co.*, 385 N.E.2d 566, 569 (N.Y. 1978).

[77] *Kraut v. Morgan & Brother Manhattan Storage Co.*, 343 N.E.2d 744, 748 (N.Y. 1976).

[78] K.S.A. 60-3326(b)(1).

[79] *Burten v. Milton Bradley Co.*, 763 F.2d 461, 467 (1st Cir. 1985).

[80] *Id.* (describing the expectation that "*absent an explicit waiver*, the exchange of ideas will take place in trust and confidence") (emphasis added).

[81] Doc. 21 at 3–4.

distinguishable because the contract terms at issue generally disclaim *all* liability for defendants' actions.[82]  By contrast, even though Plaintiff waived its trade-secret remedies in this case, it still has a claim for breach of contract and can attempt to recover damages for any alleged misuse of its trade secrets.  Under either Kansas or New York law, Plaintiff's voluntary agreement to an express provision waiving its trade-secret remedies in favor of contract remedies is binding.  The Court therefore grants Defendant's motion to dismiss Plaintiff's trade-secret claims under Kansas law (Count VI) and New York law (Count VII) with prejudice.

### iv.    Count IX (Unjust Enrichment)

Plaintiff also brings a claim against Defendant for unjust enrichment based on Plaintiff allegedly conferring benefits on Defendant by providing Defendant with valuable business information about the Johnson County swimwear market.  Plaintiff contends that Defendant's receipt and alleged ongoing use of these benefits is inequitable without payment to Plaintiff and that Defendant has therefore been unjustly enriched.  Defendant argues that this claim must be dismissed because unjust enrichment cannot be pleaded when a valid, enforceable contract controls the parties' relationship.  The Court agrees with Defendant.

Unjust enrichment falls under the category of quantum meruit and restitution, and these "are not available theories of recovery when a valid, written contract addressing the issue

---

[82] *Wolfgang v. Mid-Am. Motorsports, Inc.*, 898 F.Supp. 783, 787–88 (D. Kan. 1995) (waiver void if it released defendant not just from liability for negligence but also from gross negligence and willful or wanton conduct); *Hunter v. Am. Rentals, Inc.*, 371 P.2d 131, 133 (Kan. 1962) (refusing to enforce defendant's exemption from negligence liability, which would have left plaintiff with no recourse for seeking damages); *Osterhaus v. Toth*, 187 P.3d 126, 134–35 (Kan. Ct. App. 2008) (refusing to allow home seller to waive all liability for material misrepresentations about condition of house); *Charron v. Sallyport Glob. Holdings, Inc.*, No. 12 Civ. 6837(WHP), 2014 WL 464649, at *4 (S.D.N.Y. Feb. 3, 2014) (refusing to allow broad liability waiver to release defendant from liability for intentional acts); *Great N. Assocs., Inc. v. Cont'l Cas. Co.*, 596 N.Y.S.2d 938, 939 (N.Y. App. Div. 1993) (refusing to enforce contract term that released defendants from "any liabilities" and waived "all rights to future legal actions").

exists."[83]  The parties do not dispute that a valid, written contract exists.  In its Complaint,

Plaintiff asserts that the parties entered into the "binding and enforceable" MNDA in 2012 and

renewed it twice in 2015.[84]  Defendant, for its part, describes the MNDA as a "valid, express

contract between the parties."[85]  Furthermore, the MNDA addresses the conduct at issue—

Defendant's alleged receipt and ongoing use of Plaintiff's confidential information—through its

broad terms governing the exchange of the parties' confidential information and their agreement

to limit use of this information.[86]  Because the parties agree that a valid, written contract exists,

and because the contract addresses Defendant's alleged retention and use of Plaintiff's

confidential information, unjust enrichment is not an available theory of recovery and Plaintiff's

claim must be dismissed.[87]

 Plaintiff offers two main arguments that its unjust enrichment claim should proceed, but

both are unavailing.  First, Plaintiff argues that quasi-contractual remedies such as unjust

enrichment may be available where a contract is void or unenforceable.  The Court agrees that

unjust enrichment may be an available remedy "if the contract is void, unenforceable, rescinded,

---

[83] *Ice Corp. v. Hamilton Sundstrand Inc.*, 444 F. Supp. 2d 1165, 1170 (D. Kan. 2006) (citing *Britvic Soft Drinks Ltd. v. ACSIS Techs., Inc.*, No. 01–223–CM, 2004 WL 1900584, at *2 (D. Kan. June 8, 2004)); *Fusion, Inc. v. Neb. Aluminum Castings, Inc.*, 934 F. Supp. 1270, 1275 (D. Kan. 1996) (citing *Whan v. Smith*, 285 P. 589, 591 (Kan. 1930)).  New York law is substantially the same on this point.  *See, e.g.*, *Corsello v. Verizon N.Y., Inc.*, 967 N.E.2d 1177, 1185 (N.Y. 2012) ("An unjust enrichment claim is not available where it simply duplicates, or replaces, a conventional contract or tort claim.").

[84] Doc. 1-1, ¶¶ 22, 32, 34, 51.

[85] Doc. 6 at 10.

[86] Doc. 1-1, Ex. 1, ¶¶ 1, 3, 7.

[87] *See Ice Corp.*, 444 F. Supp. 2d at 1171 (dismissing plaintiff's unjust enrichment claim where the parties had stipulated that a written contract existed between them).

or waived by the party seeking to recover."[88]  But nowhere has Plaintiff alleged that—in the alternative to the existence of a valid contract—the MNDA is void.[89]

Plaintiff next argues that its unjust enrichment claim should stand because the MNDA has expired and therefore no longer governs the parties' relationship while Defendant allegedly continues to be enriched at Plaintiff's expense.  According to Plaintiff, unjust enrichment is the only way it can recover damages for the post-MNDA period.  Plaintiff's argument is unpersuasive, however, because the events that led to Defendant's alleged unjust enrichment— Plaintiff's conferral of its knowledge of the local swimwear market, for instance—occurred prior to expiration of the MNDA, while it still governed the parties' relationship.  Plaintiff does not contend that it supplied any additional beneficial information to Defendant after the MNDA expired.  Under New York law, Plaintiff is entitled to restitution damages for breach of contract if it can prove that Defendant materially breached the MNDA.[90]  Like unjust enrichment, restitution damages for breach of contract are an equitable remedy that allow a plaintiff to recover "the reasonable value of services rendered, goods delivered, or property conveyed" under the contract.[91]  Therefore, unjust enrichment is duplicative of Plaintiff's remedies for

---

[88] *Id.* (citing *Britvic Soft Drinks*, 2004 WL 1900584, at *2); *see also Mendy v. AAA Ins.*, Case No. 17-2322-DDC-GLR, 2017 WL 4422648, at *7 (D. Kan. Oct. 5, 2017) (citing *Ice Corp.*, 444 F. Supp. 2d at 1171).

[89] Rather, as discussed above, Plaintiff makes unavailing arguments in its response brief regarding the validity of the MNDA's waiver of trade-secret remedies.  *See* Doc. 21 at 3–4 (arguing that contract terms that attempt to waive extra-contractual liability are unenforceable).  Plaintiff does not allege in Count IX that the MNDA as a whole is void, unenforceable, rescinded, or waived.

[90] *See, e.g., Bausch & Lomb Inc. v. Bressler*, 977 F.2d 720, 729–30 (2d Cir. 1992) (applying New York law).  The Court notes that Plaintiff did not plead restitution damages, but Plaintiff's failure to do so does not affect the Court's analysis of unjust enrichment when such damages are theoretically available.

[91] *Id.* at 729; *see also* Restatement (Second) of Contracts § 373(1) (Am. Law Inst. 1981) ("[O]n a breach by non-performance that gives rise to a claim for damages for total breach or on a repudiation, the injured party is entitled to restitution for any benefit that he has conferred on the other party by way of part performance or reliance.").

breach of contract even for the period after the MNDA expired, and under New York law Plaintiff must rely on its breach-of-contract claim instead.[92]

Kansas does not appear to have yet addressed the issue of whether unjust enrichment is available when a plaintiff confers benefits on a defendant during the term of a contract and enrichment continues after the contract expires. But like New York, Kansas recognizes restitution damages for breach of contract.[93] And like New York, Kansas does not allow an unjust enrichment claim where contractual remedies are available.[94] Therefore the outcome is the same under either New York or Kansas law: Plaintiff cannot rely on its unjust enrichment claim when a binding and enforceable contract existed between the parties and all benefits are alleged to have been conferred during the term of that contract. The Court therefore grants Defendant's motion to dismiss Count IX with leave to amend to allege, in the alternative, a cause of action for unjust enrichment on the basis that the MNDA was not a valid and enforceable contract.

### v.    Count III (Tortious Interference with Employee Contracts)

Plaintiff brings a claim against Defendant for tortious interference with existing employee contracts based on Defendant's alleged attempt to hire away one of Plaintiff's employees in October 2017, despite that employee being bound by a non-compete agreement with Plaintiff. Defendant argues that this claim must be dismissed because Plaintiff has failed to

---

[92] *See Summit Props. Int'l, LLC v. Ladies Prof'l Golf Assoc.*, No. 07 Civ 10407(LBS), 2010 WL 4983179, at *7 (S.D.N.Y. Dec. 6, 2010) (limiting analysis of Plaintiff's unjust enrichment claim to benefits conferred after contract expired).

[93] *Sharman v. Webber Supply Co.*, 441 P.2d 867, 874 (Kan. 1968); *see also Fusion, Inc. v. Neb. Aluminum Castings, Inc.*, 934 F. Supp. 1270, 1275 (D. Kan. 1996) (citations omitted) (stating that under Kansas law, "quantum meruit and restitution are not available theories of recovery when a valid, written contract addressing the issue exists").

[94] *Ice Corp. v. Hamilton Sundstrand Inc.*, 444 F. Supp. 2d 1165, 1170 (D. Kan. 2006) (citing *Britvic Soft Drinks Ltd. v. ACSIS Techs., Inc.*, No. 01–223–CM, 2004 WL 1900584, at *2 (D. Kan. June 8, 2004)).

plead the essential elements of a claim for tortious interference with contract under Kansas law. The Court agrees.

"Kansas has long recognized that a party who, without justification, induces or causes a breach of contract will be answerable for damages caused thereby."[95]  In Kansas, the elements of a claim for tortious interference with contract are "(1) the contract; (2) the wrongdoer's knowledge thereof; (3) his intentional procurement of its breach; (4) the absence of justification; and (5) damages resulting therefrom."[96]  Defendant contends that Plaintiff has failed to plead all of the necessary elements because "Plaintiff has not asserted that its contract with any employee was breached.  Instead, [P]laintiff alleges that EBW unsuccessfully tried to convince [P]laintiff's employees to breach their contracts."[97]

Plaintiff does not, in fact, allege the breach of any employee's non-compete agreement. Rather, Plaintiff alleges that "[o]n or about October 25, 2017, an agent of [EBW] contacted a Swimwear employee both in store and over the phone, attempting to lure the employee to work for [EBW]. . . . .  [Defendant] warned the Swimwear employee not to tell other co-workers about the solicitation."[98]  Plaintiff further alleges that "[b]y soliciting Swimwear employees' [sic] in person, and over the phone, to work for the competing [EBW] Store, [Defendant] actively sought to procure a breach of the employees' existing non-compete contracts."[99]  Although this latter allegation refers to "employees" in the plural, the Complaint contains no allegation of any

[95] *Dickens v. Snodgrass, Dunlap & Co.*, 872 P.2d 252, 257 (Kan. 1994) (citing *Turner v. Halliburton Co.*, 722 P.2d 1106 (Kan. 1986)).

[96] *Diederich v. Yarnevich*, 196 P.3d 411, 418 (Kan. Ct. App. 2008) (quoting *Burcham v. Unison Bancorp., Inc.* 77 P.3d 130, 150 (Kan. 2003)); *see also Bushnell Corp. v. ITT Corp.*, 973 F. Supp. 1276, 1288 (D. Kan. 1997) (citation omitted).

[97] Doc. 6 at 11.

[98] Doc. 1-1, ¶ 47.

[99] *Id.* ¶ 72.

attempt to poach a Swimwear employee other than the attempt in October 2017.  Regardless of whether Defendant contacted one employee or multiple employees, nowhere has Plaintiff alleged that *any* employee breached his or her non-compete agreement as a result, and "this most basic element of breach must be alleged to state a claim for tortious interference with contract."[100] "[A]n action for tortious interference with contract does not extend to claims of adverse impact or increased burden which fall short of inducing or causing actual breach."[101]

In opposition to Defendant's motion to dismiss Count III, Plaintiff does not argue that it has properly alleged breach, nor does Plaintiff suggest that it could amend its Complaint to do so. Rather, Plaintiff concedes that "no breach of contract has yet occurred" and argues that its claim for tortious interference with employee contracts should survive because Defendant's assertion that there is no "ongoing interference" remains "unproven in the record."[102]  However, Kansas law requires that Plaintiffs plead more than that Defendants are engaging in ongoing efforts to solicit Plaintiff's employees—Kansas law requires that Plaintiff plead the essential element of actual breach, which Plaintiff has failed to do.  Plaintiff's Complaint fails to state a claim for tortious interference with employee contracts and, therefore, Count III is dismissed.

### 2.    Plaintiff's Motion to Dismiss Defendant's Counterclaim

Defendant brings a counterclaim against Plaintiff for breach of contract.  In its original Answer and Counterclaim, Defendant alleged that pursuant to the terms of the MNDA, Plaintiff was required to return Defendant's confidential information promptly upon written request, and

---

[100] *Bushnell Corp.*, 973 F. Supp. at 1288 (citing *Reazin v. Blue Cross & Blue Shield of Kan.*, 663 F. Supp. 1360, 1491 (D. Kan. 1987), *aff'd* 899 F.2d 951 (10th Cir. 1990)).

[101] *Class Commc'ns, Inc. v. Rural Tel. Serv. Co.*, 956 F. Supp. 910, 921 (D. Kan. 1997) (citing *Pizza Mgmt., Inc. v. Pizza Hut, Inc*., 737 F. Supp. 1154 (D. Kan. 1990); *Noller v. Gen. Motors Corp.*, 772 P.2d 271 (Kan. 1989)).

[102] Doc. 21 at 13–14.

that Plaintiff has failed to do so.  Defendant alleges that on or around October 28, 2015,

Defendant sent Plaintiff "a letter that identified in detail proprietary and highly confidential

information that EBW had provided to [Swimwear], and requested in writing for [Swimwear] to

return all of that information."[103]  Defendant alleged that prior to filing this lawsuit, Plaintiff did

not return any of the requested information and, since initiating suit, has returned some—but not

all—of the materials.[104]  Thus, Defendant alleged that Plaintiff is in breach of the MNDA and

that "EBW has been damaged."[105]

Plaintiff moves to dismiss Defendant's counterclaim, arguing that Defendant has failed to

plead the essential elements of a breach-of-contract claim because Defendant has not provided

factual allegations of damages.[106]  Plaintiff argues that the allegation that Defendant "has been

damaged" by Plaintiff's failure to return confidential information is insufficient to state a claim

for breach of contract because Defendant has left it to the Court and Plaintiff to speculate as to

what its damages are or will be, and how Plaintiff's failure to return documents that Defendant

already has in its possession has somehow harmed Defendant.  Plaintiff argues that "there is no

allegation that EBW lost any money or incurred any expense as a result of Swimwear having

copies of the Information,"[107] and that Defendant has "not even attempted to assert any facts

connecting Swimwear's alleged breach of the MNDA to any actual damages suffered."[108]

In response to Plaintiff's motion to dismiss, Defendant filed a First Amended Answer and

Counterclaim pursuant to Fed. R. Civ. P. 15(a)(1)(B), which it contends moots Plaintiff's

---

[103] Doc. 9 at 15, ¶ 13.

[104] Id. at 15, ¶¶ 14–15.

[105] Id. at 15, ¶¶ 15–16.

[106] Doc. 15 at 4–6.

[107] Id. at 5.

[108] Id.

arguments.[109]  The only differences between the original and amended counterclaims are: (1) the

added allegation that Plaintiff has "lost, misplaced, or disposed of some of EBW's Confidential

Information"[110]; and (2) Defendant's request for "compensatory damages, nominal damages,

specific performance and/or restitution."[111]  As for any further allegations of damages, the First

Amended Answer and Counterclaim—like the original counterclaim—merely alleges that "[a]s a

direct and proximate result of [Swimwear's] breaches, EBW has been damaged."[112]

New York law governs disputes arising under the MNDA, including Defendant's breach-

of-contract counterclaim.  To state a claim for breach of contract under New York law, a party

must prove the following elements: "'(1) a contract; (2) performance of the contract by one

party; (3) breach by the other party; and (4) damages.'"[113]  Plaintiff argues that even in its

amended counterclaim, Defendant fails to allege the element of damages because Defendant has

not provided factual allegations concerning exactly how it has been damaged.

In its response in opposition to Plaintiff's motion to dismiss, Defendant makes two

arguments.  First, Defendant argues that it has properly stated a claim for breach of contract

because its counterclaim seeks relief in the form of specific performance—Defendant requests

that the Court issue an order requiring Plaintiff to return all of Defendant's confidential

information.[114]  Second, Defendant contends that it has adequately pleaded damages, and that

"additional allegations in the counterclaim provide factual content that allows the court to draw

---

[109] Doc. 30.

[110] *Id*. at 15, ¶ 11.

[111] *Id*. at 16, ¶ 17.

[112] *Id*. at 15, ¶ 16.

[113] *Goldblatt v. Englander Comms., L.L.C.*, No. 06 Civ. 3208 (RWS), 2007 WL 148699, at *4 (S.D.N.Y. Jan. 22, 2007) (quoting *Terwilliger v. Terwilliger*, 206 F.3d 240, 245–46 (2d Cir. 2000)).

[114] Doc. 31 at 3.

the reasonable inference that EBW has been damaged sufficiently to state a claim under New York law."[115]  Defendant also contends that it need not plead actual loss because nominal damages are always available for breach of contract under New York law.  The amended counterclaim expressly seeks "compensatory damages, nominal damages, specific performance and/or restitution."[116]

Specific performance is an equitable remedy that is "appropriate when money damages would be inadequate to protect the 'expectation interest of the injured party' and when performance will not impose a disproportionate or inequitable burden on the breaching party."[117] Whether to grant specific performance is committed to the sound discretion of the trial court, which "must determine, in the first instance, whether money damages would be an adequate remedy by considering, 'among other factors, the difficulty of proving damages with reasonable certainty and of procuring a suitable substitute performance with a damages award.'"[118]

Although Plaintiff argues that Defendant has improperly asserted specific performance as a "remedy" rather than as a separate claim,[119] New York courts have held that "specific performance is an equitable remedy for a breach of contract, rather than a separate cause of action."[120]  To obtain the remedy of specific performance, "the complaint must show: (1) the making of the contract and its terms; (2) that the plaintiff is ready, willing, and able to perform

---

[115] *Id.* at 5.

[116] Doc. 30, ¶ 17.

[117] *Cho v. 401-403 57th St. Realty Corp.*, 752 N.Y.S.2d 55, 57 (N.Y. App. Div. 2002) (noting that traditionally, specific performance has been held to be a proper remedy in actions for breach of contract for the sale of real property, or when the uniqueness of the goods in question makes the calculation of money damages to difficult or uncertain) (citations omitted).

[118] *Id.* at 57 (quoting *Sokoloff v. Harriman Estates Dev. Corp.*, 754 N.E.2d 184, 188 (N.Y. 2001)).

[119] Doc. 37 at 4.

[120] *See Maestro West Chelsea SPE LLC v. Pradera Realty Inc.*, 954 N.Y.S.2d 819, 828 (N.Y. App. Div. 2012) (dismissing separate cause of action for specific performance but permitting plaintiff to seek specific performance as a remedy).

the contract and has fulfilled all of the plaintiff's duties to date; (3) that it is within the defendant's power to perform . . . ; and (4) that there is no adequate remedy at law . . . ."[121]

Plaintiff argues that Defendant has not properly alleged facts establishing these elements, and that Defendant's request for specific performance therefore cannot stand in the place of damages allegations. "Ordinarily, the issue of whether damages would adequately compensate a plaintiff is inappropriate for resolution on a motion to dismiss."[122] "Thus, it is premature at the motion to dismiss state to determine what form of damages may be appropriate,"[123] provided that damages are adequately alleged.

Defendant alleges that it "has been damaged" by Plaintiff's breach and seeks nominal damages in addition to compensatory damages, specific performance, and/or restitution.[124] The availability of nominal damages is recognized under New York law, even where the party alleging breach of contract acknowledges that the exact nature of its damages is uncertain.[125] Nominal damages are a "trifling sum awarded to a plaintiff in an action where there is no substantial loss or injury to be compensated, but the law still recognizes a technical invasion of his [or her] rights or a breach of the defendant's duty. These are formal damages as distinguished from real or substantial ones."[126] In a recent case where the plaintiff vaguely alleged that it had been damaged in an amount to be determined at trial due to the defendant's

---

[121] *Lezell v. Forde*, 891 N.Y.S.2d 606, 613 (N.Y. App. Div. 2009) (citations omitted).

[122] *Lia v. Saporito*, 909 F. Supp. 2d 149, 168 (E.D.N.Y. 2012) (citing *Sokoloff*, 754 N.E.2d 184).

[123] *Cicel (Beijing) Science & Tech. Co., Ltd. v. Misonix, Inc*., 2:17-cv-1642 (ADS) (SIL), 2017 WL 4535933, at *5 (E.D.N.Y. Oct. 7, 2017) (citing *Lia*, 909 F. Supp. 2d at 169).

[124] Doc. 30 at 15–16, ¶¶ 16–17.

[125] *See Goldblatt v. Englander Comms., L.L.C*., No. 06 Civ. 3208 (RWS), 2007 WL 148699, at *4 (S.D.N.Y. Jan. 22, 2007) (collecting cases).

[126] *McWeeney v. Lambe*, 30 N.Y.S.3d 189, 190 (N.Y. App. Div. 2016) (quoting *Berney v. Adriance*, 142 N.Y.S. 748, 752 (N.Y. App. Div. 1913)).

breach of certain contract provisions, the U.S. District Court for the Southern District of New

York held that if the plaintiff could prove breach, then "at minimum it will be able to recover

nominal damages."[127]  The court explained:

> [Defendant] cites a number of cases (and more exist) in which lower
> courts both in this district and in the New York State court system
> have dismissed contract suits for failure to adequately plead
> damages.  However, none of these cases consider the availability of
> nominal damages in a suit for breach of contract, and [Plaintiff] has
> adequately pled nominal damages.  New York law provides that
> nominal damages are always available in a breach of contract suit.
> This proposition was established by the New York Court of Appeals
> no later than 1993.  In *Ely-Cruikshank Co. v. Bank of Montreal* . . .
> the Court of Appeals held that a "breach of contract cause of action
> accrues at the time of the breach."  Crucial to that holding was its
> determination that "[s]ince 'nominal damages are always available
> in breach of contract actions,' all of the elements necessary to
> maintain a lawsuit and obtain relief in court" were present when the
> breach in that case occurred—even though no actual damages had
> yet accrued.  The Second Circuit recently drew on *Ely-Cruikshank*
> in determining that a suit for breach of contract could not be
> dismissed for failure to plausibly allege damages.[128]

Plaintiff is correct that Defendant has not alleged facts showing precisely how or to what

extent it has been damaged by Plaintiff's failure to return confidential information—which

Defendant presumably also has in its possession—other than to suggest that Plaintiff may have

"lost, misplaced, or disposed" of some of that information.[129]  However, Defendant's has

---

[127] *Saeco Vending, S.P.A. v. Seaga Mfg., Inc*., 15-cv-3280 (AJN), 2016 WL 1659132, at *8 (S.D.N.Y. Jan. 28, 2016) (citing *Luitpold Pharm., Inc. v. Ed. Geistlich Söhne A.G. Für Chemische Industrie*, 784 F.3d 78, 87 (2d Cir. 2015)).

[128] *Id.*, at *7 (quoting *Ely-Cruikshank Co. v. Bank of Montreal*, 615 N.E.2d 985, 987 (N.Y. 1993); citing *Luitpold Pharm., Inc.*, 784 F.3d at 87) (other internal citations omitted); *see also Kronos, Inc. v. AVX Corp*., 612 N.E.2d 289, 293 (N.Y. 1993) ("[A] party's rights in contract arise from the parties' promises and exist independent of any breach.  Nominal damages allow vindication of those rights."); *Weinrauch v. Kashkin*, 432 N.Y.S. 2d 640, 640 (N.Y. App. Div. 1980) ("In an action for breach of contract, where, as here, a breach on the part of the defendant is proven, plaintiff is entitled, as a matter of law, to recover at least nominal damages.") (citation omitted).

[129] Doc. 30 at 15, ¶ 11.

adequately pleaded nominal damages and, under New York law, Defendant's amended counterclaim is therefore sufficient to withstand Plaintiff's motion to dismiss.[130]

## II.    Motion for More Definite Statement

In Count VIII, Plaintiff brings a claim for misrepresentation and fraud.  Defendant has moved for a more definite statement with respect to this count pursuant to Fed. R. Civ. P. 12(e), and requests that the Court order Plaintiff to file an amended Complaint that either withdraws Count VIII or "includes the detailed allegations required to assert it" under Fed. R. Civ. P. 9(b).[131]  In response, Plaintiff argues that its misrepresentation and fraud allegations comply with Rule 9(b) and asks that the Court deny Defendant's motion or, in the alternative, grant Plaintiff leave to file an amended complaint to provide more detailed allegations.

### A.    Legal Standard

"A party may move for a more definite statement of a pleading to which a responsive pleading is allowed but which is so vague or ambiguous that the party cannot reasonably prepare a response."[132]  "Motions for a more definite statement are generally disfavored in light of liberal discovery available under the federal rules and are granted only when a party is unable to determine the issues requiring a response."[133]  "'A motion for more definite statement should not

---

[130] The Court does not consider Plaintiff's arguments concerning Defendant's failure to allege a material breach of the MNDA, which Plaintiff raised for the first time in its Reply brief.  *See Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders, LLC*, Case No. 16-cv-1094-JTM-TJJ, 2018 WL 489100, at *1 (D. Kan. Jan. 19, 2018) ("[T]he Court will not consider arguments raised for the first time in a reply brief, particularly where the arguments could have been made in the first instance.") (citing *Martinelli v. Petland, Inc.*, No. 10-407-RDR, 2010 WL 3947526, at *3 (D. Kan. Oct. 7, 2010)); *Kan. Waste Water, Inc. v. Alliant Techsystems, Inc.*, No. 02-2605-JWL-DJW, 2005 WL 327144, at *1 (D. Kan. Feb. 3, 2005) (stating that "this Court generally will not consider evidence or arguments raised for the first time in a reply brief") (citing *Liebau v. Columbia Cas. Co.*, 176 F. Supp. 2d 1236, 1244 (D. Kan. 2001); *Mike v. Dymon, Inc.*, No. 95-2405-EEO, 1996 WL 427761, at *2 (D. Kan. July 25, 1996)).

[131] Doc. 8 at 1.

[132] Fed. R. Civ. P. 12(e).

[133] *Lowe v. Experian*, No. Civ.A. 03-2046-CM, 2004 WL 1004872, at *1 (D. Kan. Mar. 31, 2004) (citing *Resolution Trust Corp. v. Thomas*, 837 F. Supp. 354, 355 (D. Kan. 1993)).

be granted merely because the pleading lacks detail; rather, the standard to be applied is whether the claims alleged are sufficiently specific to enable a responsive pleading in the form of a denial or an admission.'"[134]

Defendant's motion for a more definite statement requires consideration of both the notice pleading requirements of Fed. R. Civ. P. 8 and the heightened pleading requirements of Fed. R. Civ. P. 9(b).  Rule 8(a)(2) provides that "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Rule 9(b) requires more, providing that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Rule 9(b)'s heightened pleading requirements allow "'the defending party to prepare an effective response to charges of fraud and to protect the defending party from unfounded charges of wrongdoing which might injure its reputation and goodwill.'"[135]  Rule 9(b) does not, however, supplant the principles of notice pleading under Rule 8, which calls for pleadings to be "simple, concise, and direct."[136]  "In cases with allegations of fraud or mistake, the court reads the two rules in conjunction."[137]  Thus, to satisfy Rule 9(b), "a complaint alleging fraud [must] 'set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences

---

[134] *First Media Ins. Specialists, Inc. v. OneBeacon Ins. Co*., No. 10-CV-2501-EFM/KGG, 2011 WL 5570799, at *5 (D. Kan. Nov. 16, 2011) (quoting *Advantage Homebuilding, LLC v. Assurance Co. of Am*., No. Civ.A. 03-2426-KHV, 2004 WL 433914, at *1 (D. Kan. 2004)).

[135] *Black & Veatch Intern. Co. v. Wartsila NSD N. Am., Inc*., No. Civ.A. 97-2556-GTV, 1998 WL 264738, at *2 (D. Kan. May 21, 1998) (quoting *Cattlemen's Livestock Auction, Inc. v. Walrod*, No. Civ.A. 95-2404-EEO, 1996 WL 223918, at *1 (D. Kan. Apr. 3, 1996)).

[136] *Plastic Packaging Corp. v. Sun Chem. Corp*., 136 F. Supp. 2d 1201, 1203 (D. Kan. 2001) (quoting *Schwartz v. Celestial Seasonings, Inc*., 124 F.3d 1246, 1252 (10th Cir. 1997)).

[137] *Black & Veatch Intern. Co.*, 1998 WL 264738, at *2 (citing *Midwest Grain Prods. v. Envirofuels Mktg., Inc*., No. Civ.A. 95-2355-EEO, 1995 WL 769265, at *1 (D. Kan. Dec. 4, 1995)).

thereof.'"[138]  "In other words, the alleging party must specify the 'who, what, where, and when of the alleged fraud.'"[139]

Plaintiff contends that its Complaint satisfies Rule 9(b), but states that it is "willing to submit an Amended Complaint, which will provide even more details regarding EBW's fraud."[140]  Plaintiff's proposed Second Amended Complaint is attached as an exhibit to its response in opposition to Defendant's motion for a more definite statement and includes additional allegations in support of Plaintiff's fraud and misrepresentation claim.[141]  Under Fed. R. Civ. P. 15(a)(1), a "party may amend its pleading once as a matter of course within 21 days after serving it, or if the pleading is one to which a responsive pleading is required, 21 days after service of a responsive pleading or 21 days after service of a motion under Rule 12(b), (e), or (f), whichever is earlier."  Plaintiff here submitted an amended complaint as an exhibit to its response within 21 days after the filing of Defendant's Rule 12(e) motion for a more definite statement.  Thus, Plaintiff could have filed the amended complaint as a matter of course without this Court's leave.  Plaintiff instead requests leave to file its Second Amended Complaint, presumably pursuant to Fed. R. Civ. P. 15(a)(2),[142] should the Court grant Defendant's motion.

Defendant argues that the fraud and misrepresentation allegations set forth in Plaintiff's original Complaint are deficient in several respects, including Plaintiff's failure to identify (1)

---

[138] *Tal v. Hogan*, 453 F.3d 1244, 1263 (10th Cir. 2006) (quoting *Koch v. Koch Indus.*, 203 F.3d 1202, 1236 (10th Cir. 2000)).

[139] *Cinema Scene Mktg. & Promotions, Inc. v. Calidant Capital, LLC*, Case No. 2:16-CV-2759-JAR, 2017 WL 3730475, at *5 (D. Kan. Aug. 30, 2017) (quoting *Lee v. Kan. State Univ.*, No. 12-CV-2638-JAR-DJW, 2013 WL 2476702, at *11 (D. Kan. June 7, 2013)).

[140] Doc. 13 at 1.

[141] Doc. 13-1.

[142] Fed. R. Civ. P. 15(a)(2) provides that a party seeking to amend its pleading after the deadlines set forth in Rule 15(a)(1) have passed may do so "only with the opposing party's written consent or the court's leave.  The court should freely give leave when justice so requires."

any specific statement that was allegedly fraudulent or a misrepresentation; (2) the individual or

individuals who allegedly made the misrepresentations; (3) the content of the alleged

misrepresentations; and (4) the time and place of the alleged misrepresentations.  In its reply

brief, Defendant states that it will not "address fully the amended Complaint" because the Court

has not yet granted Plaintiff leave to amend, but nonetheless argues that the proposed Second

Amended Complaint is insufficient because while it identifies some allegedly fraudulent or

misleading statements, it signifies that "there are other statements that have not been

included."[143]  Defendant asks that if Plaintiff is granted leave to file an amended complaint, the

Court order Plaintiff "to identify and provide the requisite details about each and every statement

that is a basis of its claim for fraud."[144]

### B.    Analysis

Plaintiff alleges in its proposed Second Amended Complaint that on June 6, 2012,

Defendant's owner, Blumenthal, approached Plaintiff with "the purported purpose of discussing

the acquisition of Plaintiff's business."[145]  Plaintiff alleges that during the course of the parties'

dealings, "EBW repeatedly represented that it had a then-present interest in purchasing

[Plaintiff's] business" as evidenced by Blumenthal's July 10, 2013 inquiry about Plaintiff's

business and whether Plaintiff would be willing to enter into a  business transaction;

Blumenthal's April 23, 2014 solicitation of Jones concerning a face-to-face meeting in May

2014; and Blumenthal's offer to buy Swimwear on July 9, 2014, prior to receiving any financial

information concerning the business.[146]

---

[143] Doc. 25 at 6.

[144] *Id.*

[145] Doc. 13-1, ¶ 124.

[146] *Id.* ¶ 125(a)–(c).

Plaintiff further alleges that Defendant made false representations about its intent to acquire Plaintiff for the sole purpose of inducing Plaintiff to divulge confidential information through a November 21, 2014 request from Blumenthal—and/or another representative of Defendant, Sheila Arnold—for information about Plaintiff's business, sales, vendors, and finances, and through Blumenthal and/or Arnold's January 15, 2015 request for information concerning the sale of Plaintiff's business.[147]  Additionally, Plaintiff alleges that Defendant made a false representation of its intent to acquire Swimwear through Arnold's July 29, 2015 request for Plaintiff to price its business.[148]  Plaintiff's proposed Second Amended Complaint also sets forth other allegations of false representations by Blumenthal and/or Arnold of Defendant's intent to purchase Swimwear that are not tied to a precise date, but are alleged to have occurred in or throughout a specific month and year.[149]

Plaintiff's proposed Second Amended Complaint largely addresses Defendant's argument that Plaintiff has failed to satisfy Rule 9(b) because it sets forth allegations that include a date or a limited date range, the speaker or speakers, and the content of the allegedly fraudulent statements.  While some of Plaintiff's allegations lack a precise date, the Court finds that allegations referring to a relatively short, definite timeframe—in no case longer than one

---

[147] *Id*. ¶ 126(a), (c).

[148] *Id*. ¶ 127(c).

[149] *Id*. ¶¶ 126(b) (alleging Arnold and/or Blumenthal represented Defendant's intent to acquire Plaintiff's confidential information solely for the purpose of considering the purchase of Swimwear by requesting information concerning Plaintiff's inventory, business position, contracts, and sales throughout January 2015); 126(d) (alleging Arnold and/or Blumenthal represented Defendant's intent to acquire Plaintiff's confidential information solely for the purpose of considering the purchase of Swimwear by requesting information concerning Swimwear's financial position, vendor relationships, employment policies, and market information throughout July 2015); 127(a), (b), (d) (alleging Arnold and/or Blumenthal falsely represented Defendant's intent to acquire Swimwear through offers to purchase the business at "vastly different purchase prices" in September 2012, July 2014, and August 2015).

month—are sufficiently detailed to give Defendant notice of the misconduct alleged.[150]  Further,

the Court finds that Plaintiff's identification of Blumenthal and/or Arnold as the individual who

made each statement is likewise sufficient under the rule, given that both are representatives of

the only defendant in this case and the only individuals alleged to have been in communication

with Plaintiff.  However, Plaintiff's allegations still fail to meet the requirements of Rule 9(b)

because they do not indicate the place, or form, of Defendant's allegedly false statements.[151]

Further, Plaintiff's apparent reliance upon additional fraudulent statements or

misrepresentations that are not alleged in the proposed Second Amended Complaint but, instead,

denoted by the phrase "inter alia," is improper.[152]  Given that only three individuals were

involved in the series of communications at issue—which took place during a discrete

timeframe—Plaintiff is not excused from alleging each statement upon which it relies in stating a

claim for misrepresentation and fraud.  This is not a case where the circumstances of the alleged

fraud are uniquely within the defendant's knowledge or where it would be unduly burdensome or

---

[150] *See, e.g., Petrus v. N.Y. Life Ins. Co*., Case No. 14-cv-2268-BAS-JMA, 2016 WL 1255812, at *4 (S.D. Cal. Mar. 31, 2016) (holding that "exact dates . . . are not always necessary to meet the Rule 9(b) pleading standard) (citations omitted).

[151] *See Jamieson v. Vatterott Educ. Ctr., Inc*., 473 F. Supp.2d 1153, 1157 (D. Kan. 2007) (holding that plaintiff failed to adequately allege place of fraud where complaint contained no allegation about place of verbal misrepresentations or place of written misrepresentations delivered by mail, and did not allege whether written misrepresentations were made on "brochures, personalized letters, bills, e-mails, or any of the many forms of written communication.") (citing *In re Universal Serv. Fund Tel. Billing Practices Litig*., 300 F. Supp.2d 1107, 1150 (D. Kan. 2003); *Schwartz v. Celestial Seasonings, Inc*., 124 F.3d 1246, 1252 (10th Cir. 1997)).

[152] *See, e.g., Moore v. The Climate Corp*., Case No. 15-4916-DDC-KGS, 2016 WL 4527991, at * 11 (D. Kan. Aug. 30, 2016) ("[P]laintiffs, as the recipients of the alleged misrepresentations, should not require discovery to know the factual detail necessary to assert fraud claims."); *In re Rosen*, 132 B.R. 679, 682 (E.D.N.Y 1991) ("If the Plaintiffs know of the misleading statements or acts made by a Defendant, they must allege each and every statement with particularity."); *Goldman v. Belden*, 98 F.R.D. 733, 738 (W.D.N.Y. 1983) ("In the instant case, either plaintiff knows of misleading statements made by the defendants or he does not.  If he does, then he must allege each and every statement with particularity.  If he does not, then he may not use the federal discovery procedures to flush statements out.").

impossible to allege each fraudulent statement.[153]  The Court therefore grants Defendant's

Motion for a More Definite Statement.

      **IT IS THEREFORE ORDERED BY THE COURT** that Defendant's Motion to

Dismiss (Doc. 5) is **granted** with prejudice as to Counts III, V, VI, VII, and X of Plaintiff's

Complaint, and with leave to amend as to Count IX.  Plaintiff's Motion to Dismiss EBW's

Counterclaim (Doc. 14) is **denied**.  Defendant's Motion for More Definite Statement (Doc. 7) as

to Count VIII is **granted**.

      **IT IS FURTHER ORDERED BY THE COURT** that Plaintiff shall file an amended

complaint within 14 days from the date of this Order setting forth: (1) the place or form of each

false representation alleged in its proposed Second Amended Complaint; and (2) the time, place,

and contents of the false representation, the identity of the party making the false representation,

and the consequences thereof, for each additional fraudulent statement, if any, that forms the

basis of Count VIII.  Additionally, Plaintiff may, within 14 days of the date of this Order, file an

amended complaint pleading an alternative claim for unjust enrichment on the basis that the

parties' contract was invalid.

      **IT IS SO ORDERED.**

      Dated: March 30, 2018

                         S/ Julie A. Robinson
                         JULIE A. ROBINSON
                         CHIEF UNITED STATES DISTRICT JUDGE

---

[153] *See, e.g., United Air Lines, Inc. v. Gregory*, 716 F. Supp. 2d 79, 86 (D. Mass. 2010) (holding that strict application of Rule 9(b) may be relaxed where the underlying facts are uniquely within the defendant's control or where the alleged fraud occurred over an extended time period and involved numerous transactions) (citations omitted); *Highlands Rests., Inc. v. Judy's Foods, Inc.*, No. 83-4030, 1990 WL 92484, at *3 (D. Kan. June 26, 1990) (noting that the requirements of Rule 9(b) may be relaxed in cases of corporate fraud when a group of defendants is responsible for a document or statement containing fraudulent misrepresentations, or where the alleged fraudulent acts are numerous and occur over a prolonged period of time) (citations omitted).